ATKINSON WAREHOUSING
AND DISTRIBUTION,
INC., Plaintiff,

v.

ECOLAB, INC., Defendant.

Civil No. H–99–106.

United States District Court,
D. Maryland.

May 18, 2000.

Arnold S. Albert, Albert, Albert & Schulwolf, Washington, DC, for plaintiff.

Ellen R. Lokker, Hogan & Hartson, Washington, DC, for defendant.

## *MEMORANDUM AND ORDER*

ALEXANDER HARVEY, II, Senior District Judge.

In its Memorandum and Order of May 9, 2000, this Court denied the motion *in limine* of defendant Ecolab, Inc. ("Ecolab") which sought to preclude plaintiff from calling three witnesses to testify at the trial. The following additional motions *in limine* are now pending before the Court:

(1) The motion *in limine* of plaintiff Atkinson Warehousing and Distribution, Inc. ("AWD") to preclude on various grounds the admission of certain evidence which defendant Ecolab plans to introduce at the trial;

(2) Defendant's motion *in limine* to limit evidence on damages to the 60–day notice period; and

(3) Defendant's motion *in limine* to exclude evidence of alleged damages beyond duration of contract.

The Court has now had an opportunity to review the memoranda and exhibits filed by the parties in support of and in opposition to these motions. No hearing is necessary. *See* Local Rule 105.6. For the reasons stated herein, plaintiff's motion *in limine* will be granted in part and denied in part, defendant's motion *in limine* to limit evidence on damages to the 60–day notice period will be denied, and defendant's motion *in limine* to exclude evidence of damages beyond the duration of the contract will be granted.

### I

#### *Plaintiff's Motion in Limine*

Consideration of plaintiff's motion *in limine* requires that this Court apply the principles of Rule 403, F.R.E., to the evidence which defendant seeks to introduce and which plaintiff has challenged. Rule 403 provides as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

■ Rule 403 is an important rule of evidence which permits this Court in its discretion to exclude relevant evidence on various grounds. Implementation of the Rule insures that prejudicial evidence will not be presented, that evidence will not be introduced which will confuse the issues and mislead the jury as to the determinative facts and that undue delay will not result and time will not be wasted by the presentation of marginally relevant or cumulative evidence. Application of the Rule is an important tool which should be used by a court to guarantee that a fair trial is held and that trial efficiency is promoted. As the Fourth Circuit has in particular noted, considerations of potential confusion of the jury through the introduction of evidence not directly related to the controversy before it adequately justifies an exercise of a trial judge's discretion in favor of exclusion. *Daskarolis v. Firestone Tire & Rubber Co.*, 651 F.2d 937, 940 (4th Cir. 1981).

### (a)

#### *Testimony Regarding Theft or Mishandling of Ecolab Inventory*

■ As noted in the Court's Memorandum and Order of November 22, 1999, defendant Ecolab for many years utilized the warehousing and distribution services of B.E.P., Inc. ("BEP"), which is owned by its President Michael Nash ("Nash"). According to deposition testimony taken in this case, Nash, when he became aware that William Atkinson ("Atkinson") had entered into negotiations with Ecolab for the

transfer of its warehousing business from BEP to AWD, contacted officials at Ecolab and accused Atkinson of having stolen or mishandled Ecolab's inventory during the period of time when Atkinson worked for BEP. According to plaintiff AWD, representatives of Ecolab investigated Nash's accusations and found them to be meritless. Plaintiff claims that the testimony in question would be highly prejudicial and should be excluded under Rule 403.

According to defendant, the evidence in question is relevant inasmuch as it relates to the issue of AWD's ability to own and manage a warehousing business. Defendant notes that Nash will be a witness at the trial and that he is competent to testify concerning Atkinson's misconduct. Defendant contends that plaintiff's assertion that Ecolab representatives investigated Nash's accusations and found them to be meritless can be presented to the jury during cross-examination of Ecolab officials.

This Court concludes that defendant Ecolab must be precluded from presenting to the jury any evidence concerning Nash's accusations that Atkinson stole or mishandled Ecolab's inventory while he was employed by BEP. The probative value of the evidence in question is substantially outweighed by the danger that plaintiff would be unfairly prejudiced and the further danger that the jury would confuse the issues in this case and would be misled. The Court is satisfied that the probative value of Nash's accusations is minimal because they would offer little insight into whether Atkinson could manage a warehousing business. The testimony in question is only marginally relevant to issues in this case, and its introduction would unfairly prejudice plaintiff. Accordingly, testimony regarding the theft or mishandling by Atkinson of Ecolab inventory must be excluded under Rule 403.

### (b)

### *Evidence of Financial Difficulties of International Grocery, Inc.*

■ William Atkinson, Jr. ("Atkinson, Jr.") is the son of Atkinson. He owned and operated International Grocery, Inc. ("IGI"), another warehousing business. IGI experienced various financial difficulties, and defendant wishes to present at the trial evidence relating to the financial problems of IGI.

In its pending motion, plaintiff asks this Court to exclude evidence pertaining to the financial difficulties experienced by IGI. According to plaintiff, the evidence in question is not relevant to any issue in the case, and plaintiff contends that it would be unfairly prejudiced if the evidence is presented at the trial. In response, defendant argues that IGI played a role in this case because it stored some Ecolab inventory during the time of the matters in suit. According to defendant, evidence relating to IGI's financial difficulties is relevant because Atkinson intended for his son to play a significant role in operating AWD. Defendant maintains that evidence pertaining to the financial difficulties encountered by Atkinson, Jr. in his warehousing business is highly relevant to the issue of whether Atkinson, his father, was qualified to operate a new warehousing business.

On the record here, this Court concludes that defendant Ecolab may not present at the trial evidence of the financial difficulties experienced by IGI. The probative value of such evidence is substantially outweighed by the danger that the jury would confuse the issues in this case and would be misled by evidence relating to the operation by Atkinson, Jr. of his IGI warehousing business. Evidence of record in this case indicates that AWD would have been operated and managed by Atkinson himself, and that Atkinson, Jr.'s role would merely have been to serve as a shipping and receiving foreman. Needless delay would result if evidence pertaining to the financial difficulties of IGI and the reasons for them were to be introduced at the trial. The Court is satisfied that the evidence in question must be excluded under Rule 403.

### (c)

### *Testimony of Defendant's Damages Expert*

Included as a part of the damages sought by plaintiff AWD in this case is its

claim for lost profits. In its Memorandum and Order of November 22, 1999, this Court rejected defendant's contention that it was entitled to summary judgment because plaintiff would not be able to prove at the trial that AWD suffered any damages as a result of the breach of contract alleged. Counsel for defendant had argued that plaintiff's claim for damages for loss of profits was too speculative for plaintiff to be permitted to proceed to trial on that claim. In its ruling of November 22, 1999, this Court concluded that on the record before it there were triable issues of fact relating to the amount of damages recoverable by plaintiff in this case. The Court noted that plaintiff planned to present expert testimony establishing the amount of damages suffered as a result of defendant's alleged breach of contract. The Court concluded that defendant's arguments that the damages claims were too speculative went to the weight and not to the admissibility of the evidence to be presented by AWD in support of its claim for damages.

Plaintiff intends to call Neil Demchick as its damages expert in this case. Defendant in turn proposes to call Maurice Whalen as its expert damages witness. In its pending motion *in limine*, plaintiff asks this Court to order that Whalen be barred from testifying at the trial. Plaintiff further argues that, even if Whalen is permitted to testify, certain subsidiary opinions of his should be excluded.

Rules 702 and 703 of the Federal Rules of Evidence provide guidance to a court in its consideration of challenges to the testimony of an expert witness. In *United States v. Harris*, 995 F.2d 532, 534 (4th Cir.1993), the Fourth Circuit noted that the "exclusion of expert testimony under Rule 702 is within the sound discretion of the trial judge."

Rule 702 provides as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Rule 703 provides as follows:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

■ In Maryland, three rules are followed limiting the recovery of unrealized profits: (1) a plaintiff must show that a breach by the defendant was the cause of the loss; (2) damages may not be awarded unless, when the contract was executed, the defendant could have reasonably foreseen that a loss of profits would be a probable result of a breach; and (3) lost profits may not be recovered unless they can be proved with "reasonable certainty," as distinguished from "certainty." *Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.*, 283 Md. 296, 330 (1978) (citing *M & R Contractors & Builders v. Michael*, 215 Md. 340, 345–49, 138 A.2d 350 (1958)). In *M & R Builders*, the Maryland Court of Appeals noted that the "certainty" rule had been modified into a more flexible one of "reasonable certainty." *Id.* at 348, 138 A.2d 350. The Court further explained:

In such instances, recovery may often be based on opinion evidence, in the legal sense of that term, from which liberal inferences may be drawn. Generally, proof of actual or even estimated costs is all that is required with certainty ... Some of the modifications which have been aimed at avoiding the harsh requirements of the "certainty" rule include: (a) if the fact of damage is proven with certainty, the extent or the amount thereof may be left to reasonable inference; (b) where a defendant's wrong has

caused the difficulty of proving damage, he cannot complain of the resulting uncertainty; (c) mere difficulty in ascertaining the amount of damage is not fatal; (d) mathematical precision in fixing the exact amount is not required; (e) it is sufficient if the best evidence of the damage which is available is produced; and (f) the plaintiff is entitled to recover the value of his contract as measured by the value of his profits.

*Id.* at 348–49, 138 A.2d 350.

■ Applying these principles here, this Court concludes that plaintiff's motion *in limine* to exclude *in toto* the testimony of defendant's expert must be denied. The Court is satisfied that, pursuant to Rule 702, Whalen's specialized knowledge will assist the jury to determine facts in issue. Counsel for plaintiff repeatedly argues that Whalen is merely an accountant and should not be permitted to testify concerning Atkinson's ability to successfully operate a new business. But Whalen is more than only a certified public accountant. He has many years of experience as a management consultant. Many of his clients have been small start-up or development stage companies, and Whalen has rendered advice to those clients concerning the operation and management of their businesses.

Plaintiff objects to Whalen's challenges to the factual bases for Demcheck's conclusions. But, it is not at all unusual at a trial for one expert to criticize the opinions rendered by an expert called by the opposing party as well as the factual basis for them, as Whalen intends to do here. Whalen is expected to testify that the damage calculations of Demchick have no rational foundation. Whalen has challenged Demchick's calculations on the ground that the analysis employed by Demchick is contrary to evidence presented in the case, on the ground that Demchick's analysis is incomplete, and on the ground that Demchick's conclusions are based upon speculation concerning contingencies which may never occur. The Court is satisfied that

the testimony in question may be presented by Whalen at the trial.

■ In support of its pending motion *in limine,* counsel for plaintiff argues that defendant should be precluded from presenting evidence at the trial that plaintiff's damages are "speculative" and not "reasonably certain." The Court must disagree. Defendant's expert Whalen may testify at the trial concerning the speculativeness of plaintiff's damage calculations. It is well established under Maryland law that a plaintiff has the burden to prove lost profit damages to a "reasonable certainty." *Impala,* 283 Md. at 330, 389 A.2d 887. As noted by the Supreme Court in *Bigelow v. RKO Radio Pictures,* 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946), "even where the defendant by his own wrong has prevented a more precise [damage] computation, the jury may not render a verdict based on speculation or guesswork." The testimony of Whalen concerning the "speculativeness" of plaintiff's damage calculations, is highly relevant to the issue of whether plaintiff can prove its claim for damages for lost profits to a reasonable certainty.

Plaintiff has argued that defendant's breach prevented performance of the contract and that since defendant's wrong caused the difficulties faced by plaintiff in proving damages, defendant cannot complain of the resulting uncertainty. This is a factor which the jury may indeed consider in deciding whether plaintiff has proved lost profit damages to a reasonable certainty. After the jury has determined whether a contract between the parties existed, has determined what were its terms and has determined what were the circumstances of defendant's breach of that contract, it will be for the jury to also decide whether such breach adversely affected plaintiff's ability to prove damages.

Plaintiff has further argued that Whalen's opinion that plaintiff's claims for damages are "speculative" constitutes an opinion as to a matter of law which is in-

admissible. The Court must disagree. Whalen's conclusions that Demchick's damage calculations are speculative and unreasonable are based on facts included in or omitted from Demchick's analysis. As such, they do not constitute legal opinions. Whalen's conclusions do not have "a separate, distinct and specialized meaning in the law not present in the vernacular ..." *See Torres v. County of Oakland,* 758 F.2d 147, 151 (6th Cir.1985) (citation omitted).

As an alternative argument, plaintiff contends that if the Court does not bar the presentation of Whalen's testimony *in toto,* numerous specific opinions referenced in his report and supplemental report should be excluded. Ten separate opinions of Whalen are claimed to be inadmissible. Plaintiff's objections address three areas in general, as follows: (1) the competency of Whalen to testify with regard to the ability of the Atkinsons to successfully manage the proposed warehouse; (2) the assumptions behind many of Whalen's conclusions regarding the speculative nature of Demchick's damage calculations; and (3) the calculation of damages made by Whalen.

Following its review of the various portions of Whalen's reports claimed to be objectionable, this Court concludes that there is no merit to any of plaintiff's objections. Pursuant to Rules 702 and 703, the Court is satisfied that Whalen may render the opinions in question. There are facts of record which support the conclusions reached by Whalen. The assumptions made by him are based on facts of record or their absence and are not unreasonable on the record here. Pursuant to Rule 704, expert testimony is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact. Moreover, an opinion based upon a disputed fact may not be excluded simply because it pertains to an issue to be decided by the jury. *Burkhart v. Washington Metro. Area Transit Auth.,* 112 F.3d 1207, 1212–13 (D.C.Cir.1997). As the Court noted in *Burkhart,*

> An expert may offer his opinion as to facts that, if found, would support a

conclusion that the legal standard at issue was or was not satisfied. *Id.*

The substance of plaintiff's objections goes to the weight and credibility of Whalen's testimony rather than to its admissibility. It will be for the jury to resolve the factual disputes in this case and thereafter to determine the weight to be given to the experts' opinions based on those facts. If the jury finds that the facts upon which a particular expert relied are not sufficient to support the opinion or that the facts relied upon are erroneous, the jury may reject the opinion. If the jury finds that the reasons supporting the opinion of a particular expert are sound and that the facts relied upon do support such opinion, then the jury may give weight to the opinion and consider it in reaching its verdict. The Court will so instruct the jury in its charge.

Plaintiff has also argued that Whalen's opinions on mitigation should be excluded because that defense was not mentioned in the Supplemental Pretrial Order. Once again, the Court must disagree. The Pretrial Order included a statement indicating that defendant was relying on "principles of mitigation of damages." There was no need to repeat that statement in the Supplemental Pretrial Order which supplemented the original Pretrial Order by listing affirmative defenses. In challenging the damages calculations of Demchick, Whalen may testify at the trial that plaintiff failed to take steps to mitigate the profits claimed to have been lost as a result of defendant's breach of the contract.

For all these reasons, plaintiff's motion *in limine* seeking to bar defendant's expert from testifying at the trial must be denied.

## II

### Defendant's Motion in Limine to Limit Evidence of Damages to the Sixty-Day Termination Notice Period

Throughout the course of this dispute, plaintiff AWD has maintained that the

binding contract between the parties at issue is the October 27, 1998 letter, as supplemented by the Warehousing Agreement of November 3, 1998. That letter contained a two-year term. Defendant has contended, on the other hand, that the controlling agreement here is the Warehousing Agreement which contains a sixty-day termination notice provision. According to defendant, notice of termination was given by it, limiting recoverable damages to such sixty-day period. In its Memorandum and Order of November 22, 1999, this Court ruled as follows:

> Whether or not defendant Ecolab breached the contract between the parties is ... in sharp dispute. According to AWD, when [Ecolab] gave Atkinson notice that Ecolab would continue to operate out of BEP, Ecolab breached the contract entered into on October 27, 1998. Defendant Ecolab counters by asserting that it was authorized under the provisions of the Warehousing Agreement of November 3, 1998 to terminate that Agreement when it did. However, before the issue of breach can be addressed, a determination must be made in this case concerning the terms and conditions of the contract between the parties. Since the Court cannot as a matter of law on this record determine what were the provisions of the binding contract between the parties, the Court cannot at this stage of the case decide whether the contract was breached by defendant Ecolab.

Slip op. at 13.

In its motion *in limine*, defendant requests that this Court limit the evidence on damages to be presented by plaintiff to the sixty-day period provided in the Warehousing Agreement. For the reasons stated in the Court's earlier ruling, this request must be denied.

The Court has previously ruled that the provisions of the binding contract between the parties cannot be determined as a matter of law on the record here. That issue must be decided by the jury. Based on evidence of record, the jury would be entitled to conclude that the term of the contract was two years and that the termination provision in the Warehousing Agreement was not a part of the binding agreement between the parties.

By requesting that this Court limit the evidence on damages in this case to the sixty-day period, defendant is essentially requesting that this Court conclude as a matter of law that the sixty-day notice provision was a part of the binding contract between the parties. The Court has already ruled that it cannot make that determination as a matter of law. Accordingly, defendant's motion *in limine* seeking to limit evidence on damages to the sixty-day termination notice period must be denied.

## III

### *Defendant's Motion to Exclude Evidence of Damages Beyond Alleged Duration of Contract*

To recover lost profits damages in this case, plaintiff must demonstrate (1) that a breach by defendant was the cause of plaintiff's loss, (2) that defendant could have reasonably foreseen that the loss of profits would be the probable result of the breach, and (3) the amount of lost profit damages with reasonable certainty. *Impala*, 283 Md. at 330, 389 A.2d 887. The measure of damages for a breach of contract is that sum which would put plaintiff in as good a position as he would have occupied had the contract been fully performed. *Dialist Co. v. Pulford*, 42 Md. App. 173, 179, 399 A.2d 1374 (1979). A plaintiff "cannot expect to receive in profits, by way of damages, any more than he would have gained had the *terms of the contract* been fulfilled." *Cottman v. Department of Nat. Resources*, 51 Md.App. 380, 385, 443 A.2d 638 (1982) (emphasis added).

 In Count I of the amended complaint, it is alleged that on October 27,

1998, AWD and Ecolab entered into a contract whereby AWD would provide Ecolab with warehousing and distribution services commencing on December 4, 1999 for a period of two years. Defendant argues that based on this allegation, plaintiff can recover, at most, lost profits damages for only the two-year period alleged by plaintiff to be the term the contract. This Court would agree. Any expert opinion testimony to be offered at the trial by Demchick must therefore be limited to the two-year term which is an express provision of the agreement claimed by plaintiff to have been breached by defendant. Any evidence or testimony offered by Demchick based on an additional three year period following the expiration of the two-year term of the agreement must be excluded as irrelevant.

As noted, a plaintiff under Maryland law cannot recover any more lost profits damages than it would have gained had the terms of the contract been fulfilled. *Cottman*, 51 Md.App. at 385, 443 A.2d 638. Not only has plaintiff alleged that the term of the contract at issue was two years, but also the October 27 letter itself specifically provides for a two year term. Since plaintiff is entitled to recover only just and adequate compensation for its injury and no more, it necessarily follows that its recovery must be limited to fair compensation for the loss which does not place it in a better position than it would have been in had the contract not been broken. *Tidewater Oil Co. v. Spoerer*, 145 Md. 151, 154–155, 125 A. 601 (1924).

Plaintiff's reliance on *United Roasters, Inc. v. Colgate–Palmolive, Co.*, 649 F.2d 985 (4th Cir.1981) is misplaced. The facts of that case are substantially different from those present here. Moreover, the Fourth Circuit was applying North Carolina rather than Maryland law. The Fourth Circuit there upheld in a breach of contract case a jury verdict which awarded plaintiff compensation for the loss of its business as a going concern. There was evidence at the trial that defendant, which

had agreed to use its best efforts in manufacturing and distributing a food product developed by the plaintiff, had refused to return plaintiff's assets after the contract was terminated, including plaintiff's production facilities, and that defendant had deprived plaintiff of an opportunity to sell its business as a going concern or to develop it on its own. In this case, plaintiff cannot claim that defendant somehow deprived it of an opportunity to develop or sell its business. Nor is there evidence that defendant refused to return to plaintiff any of its assets, thus making it impossible for plaintiff to sell its company to third parties. Were the Court in this case to permit plaintiff to recover damages beyond the two-year term of the contract which plaintiff claims was breached, it would be placing plaintiff in a better position than it would have occupied had the contract not been breached.

For these reasons, defendant's motion *in limine* to exclude evidence of alleged damages beyond the duration of the contract must be granted.

## IV

### *Conclusion*

For all the reasons stated, plaintiff's motion *in limine* will be granted in part and denied in part, defendant's motion *in limine* to limit evidence on damages to the 60–day notice period will be denied, and defendant's motion *in limine* to exclude evidence of alleged damages beyond duration of contract will be granted. Accordingly, it is this _____ day of May, 2000 by the United States District Court for the District of Maryland,

ORDERED:

1. That the motion *in limine* of plaintiff Atkinson Warehousing and Distribution, Inc. to exclude evidence is hereby granted in part and denied in part;

2. That the motion *in limine* of defendant Ecolab, Inc. to limit evidence on

damages to 60–day notice period is hereby denied;

3. That the motion *in limine* of defendant Ecolab, Inc. to exclude evidence of alleged damages beyond duration of contract is hereby granted.